UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANTON COUSINS, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 3:18-cr-00026-GFVT-HAI |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RICK ROGERS, CPT ABRAMS, SGT | ) | **&** |
| LUCAS, and SGT JONES, | ) | **ORDER** |
| | ) | |
| Defendants. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Recommended Disposition filed by Magistrate Judge Hanly A. Ingram. [R. 72.] The Defendants in this matter moved for summary judgment. [R. 39.] Consistent with local practice, Judge Ingram reviewed the motion, recommending to the Court that the motion be granted in part and denied in part. [R. 72.]

Under Federal Rule of Civil Procedure 72(b)(2), a party has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection must "explain and cite specific portions of the report which [defendant] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and citations omitted). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Both parties filed objections. Defendants filed timely, specific objections on July 26, 2019. [R. 76.] Mr. Cousins also filed objections, some of which were out of time.[1] [R. 80; R. 83.] Accordingly, the Court has an obligation to conduct a *de novo* review of the Magistrate Judge's findings. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, all objections will be **OVERRULED**, and Judge Ingram's Recommendation will be **ADOPTED**.

I

Judge Ingram's Recommended Disposition accurately sets forth the factual and procedural background of the case. The Court mentions only key facts to frame its discussion and analysis and incorporates Judge Ingram's discussion of the record in this Order. In 2017, Mr. Cousins was a pretrial detainee at the Franklin County Regional Jail. [R. 1 at 1.] He alleges that during his time there, he was not permitted kosher meals, he was jumped by other inmates, he was punished more harshly than other individuals, the Defendants and staff made his time difficult, and that he experienced significant weight loss. [R. 1-1 at 1; R. 9 at 1–2.] Mr. Cousins sued Rick Rogers, jailer of the Franklin County Regional Jail; Robert Abrams, captain of the jail; Garry Lucas, sergeant at the jail; and Joshua Jones, sergeant at the jail. [R. 1 at 1–2.] In this complaint, he alleged violations of the First, Eighth, and Fourteenth Amendments, along with

---

[1] Pursuant to the prison mailbox rule, *pro se* prisoner filings are deemed filed when the document has been delivered to prison officials. *See Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002). Judge Ingram's Recommendation was filed on July 15, 2019, making objections due on August 1, 2019. Fed. R. Civ. Pro. 72; Fed. R. Civ. Pro. 6(e). Mr. Cousins indicated that his first set of objections were mailed on August 1, 2019. [R. 80.] These objections were timely. However, his Amended Objections state that they were mailed on August 6, 2019, which is after the deadline. [R. 83.] He also does not include a reason for filing these objections out of time, so the Court cannot determine whether an extension of time would be warranted. Accordingly, Mr. Cousins's Amended Objections [R. 83] are **OVERRULED** as untimely.

claims under the Religious Land Use and Institutionalized Persons Act. [R. 1 at 4; R. 9 at 2.] Judge Ingram separated his claims into two incidents: the jail's failure to provide him with kosher meals and the jail's response to an altercation that occurred between himself and another detainee. [R. 72 at 3.]

A

Upon his booking at the Franklin County Regional Jail on June 7, 2017, Mr. Cousins told the officers that he was on a kosher diet. [R. 39-19 at 1.] He also informed jail staff the next morning of his dietary restrictions. [R. 39-4 at 3–4.] The staff serving breakfast simply told him to eat what he could, that a kosher meal would be provided for lunch. *Id*. at 4. But at lunch, the officer told Mr. Cousins that he needed to file a medical grievance in order to receive kosher meals. *Id*. at 7. So, he filed a medical grievance, but the nurse informed him that he needed to file a regular grievance instead. [R. 39-4 at 7; R. 1-1 at 3.] He did this, but claims he never received kosher accommodations. [R. 39-4 at 8.]

He then wrote to Defendant Sergeant Garry Lucas to request kosher meals, as Sergeant Lucas ran the kitchen, but he was informed that he would need to first "prove his faith." *Id*. at 10–11. Mr. Cousins retorted, "it's impossible to prove that God exist[s]," at which time Mr. Cousins claimed that Sergeant Lucas essentially "cussed [him] out." *Id*. at 11. Sergeant Lucas indicated he would speak to someone about the request for kosher meals, but Mr. Cousins maintains that never happened. *Id*. at 12.

Mr. Cousins filed another grievance on June 23, 2017. [R. 39-20.] He was then informed by Defendant Sergeant Joshua Jones and Defendant Captain Robert Adams that he needed verification of his eligibility for kosher meals by a religious authority. [R. 39-4 at 15–16.] Sergeant Jones permitted Mr. Cousins use of the phone, as well as paper and envelopes, to

contact such religious authority. *Id*. at 18. He attempted to contact synagogues in the area, but he did not receive a response. *Id*. at 18–20. Meanwhile, he ate as best he could, representing to the Court that he ate meat on only two occasions. *Id*. at 6. He also spoke to the medical staff about his diet and weight loss, even asking them to place him on a vegan diet. *Id*. at 37–39.

B

Shortly thereafter, on August 6, 2017, Mr. Cousins and a fellow detainee, Stephen Wendling, were involved in an altercation. [R. 39-4 at 23.] Apparently, Mr. Wendling confronted Mr. Cousins and another inmate about trying to steal his possessions. *Id*. at 24. Mr. Cousins alleges that he fought back, but only after he was punched twice. *Id*. at 25. Mr. Wendling and the other inmate are both white, while Mr. Cousins is black. *Id*. at 26. He claimed his finger was broken during the fight and he was denied hospital treatment, but x-rays taken a week later indicated that nothing was broken. *Id*. at 26, 36.

Mr. Cousins was placed "in the hole" for ninety days as punishment for the altercation. *Id*. at 28. Captain Abrams allegedly told Mr. Cousins he was never letting him out of the hole. *Id*. at 28–29. Mr. Wendling also received ninety days of disciplinary confinement for the altercation [R. 39-27; R. 39-28], though Mr. Cousins initially thought Mr. Wendling was there for only twenty days [R. 39-4 at 35].

After his lockdown, Mr. Cousins attended a church service, where he was confronted by Captain Abrams. [R. 39-4 at 29–33.] At this point, Captain Abrams denied being racist and told Mr. Cousins that his filed grievances were fruitless. *Id*. So, on September 7, 2017, Mr. Cousins submitted another grievance alleging that he was "being racially hated on in this jail." [R. 39-29.] In the grievance, Mr. Cousins alleged mistreatment by Captain Abrams, that he had not

4

received his mail, and that his calls were being cut. *Id*. The grievance was denied for failure to allege a time and date of the occurrence. *Id*.

C

Judge Ingram first recommended the Court dismiss Mr. Cousins's claims pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA). [R. 72 at 7.] Specifically, RLUIPA does not permit monetary damages against state prison officials, and because Mr. Cousins only seeks monetary relief, he cannot succeed under RLUIPA. *See Haight v. Thompson*, 763 F.3d 554, 560 (6th Cir. 2014). Next, before considering the constitutional claims, Judge Ingram noted that the complaint did not indicate whether Mr. Cousins intended to sue the defendants in their official or individual capacities. [R. 72 at 9.] Using the "course of proceedings" test, Judge Ingram found that Mr. Cousins intended to sue the Defendants in both their official and individual capacities. *Id*. at 9–12.

Then, Judge Ingram determined that a genuine issue of material fact existed for Mr. Cousins's Free Exercise Claim, thus precluding summary judgment in favor of Captain Abrams and Sergeants Jones and Lucas in their individual capacities. *Id*. at 12–17. Specifically, these Defendants were unable to provide evidence as to why they had denied Mr. Cousins's requests for kosher meals, leaving unanswered whether their denial was based on a legitimate penological interest or whether it was based on an arbitrary or impermissible reason. *Id*. at 16–17. Judge Ingram found that Captain Abrams, Sergeant Lucas, and Sergeant Jones were also not entitled to qualified immunity because they knew their denial of Mr. Cousins's request must be supported by a legitimate penological interest. *Id*. at 17–18.

However, Judge Ingram determined that Jailer Rick Rogers could not be held liable for any violation of the Free Exercise Clause in his individual capacity, as the theory of *respondeat*

5

*superior* does not apply to these claims. *Id*. at 18. Further, Judge Ingram recommended the Court grant summary judgment as to the Defendants in their official capacities. *Id*. at 18–21. Official-capacity claims are treated as suits against the state, and to succeed, Mr. Cousins must demonstrate that a municipal policy or custom was responsible for any alleged violations of his constitutional rights. *Id*. at 18–19; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Mr. Cousins, however, was unable to present any evidence for this, and Judge Ingram found the official defendants are entitled to summary judgment for his Free Exercise Claim. [R. 72 at 18–20.]

Next, Judge Ingram addressed Mr. Cousins's retaliation claims. *Id*. at 21–24. Based on his complaint, Judge Ingram construed this claim as being made only against Sergeant Lucas and Captain Abrams in both official and individual capacities. *Id*. at 21. However, Judge Ingram recommended only permitting the retaliatory claim against Captain Abrams individual to continue, finding Mr. Cousins failed to establish the required evidence against Sergeant Lucas or against Captain Abrams in his official capacity. *Id*. at 21–24.

As to Mr. Cousins's claims regarding the jail's failure to provide kosher meals, harassment by Captain Abrams and Sergeant Jones, placement in the same dorm as Mr. Wendling, and the jail's failure to provide adequate medical care following his altercation, Judge Ingram construed these as claims for violations of his Fourteenth Amendment rights, rather than his Eighth Amendment rights. *Id*. at 24. Though his complaint asserted Eighth Amendment claims, as a pretrial detainee, the Fourteenth Amendment applies to his claims of deliberate indifference, not the Eighth. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) ("However, the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to

6

a convict than to one awaiting trial."). After thoroughly analyzing these claims, the Magistrate Judge recommended granting summary judgment for the Defendants on Mr. Cousins's Fourteenth Amendment Claims. [R. 72 at 24–28.]

Judge Ingram also found that Mr. Cousins's Due Process claim concerning the handling of filed grievances did not state a constitutional violation. *Id*. at 28. And finally, Judge Ingram determined that Mr. Cousins's Equal Protection claim based on Mr. Wendling's punishment for the altercation would warrant summary judgment against him, as he had failed to demonstrate the Defendants acted with discriminatory intent or purpose. *Id*. at 28–29. In summary, Judge Ingram recommended denying Defendants' Motion for Summary Judgment as to Mr. Cousins's First Amendment Free Exercise Claim against Captain Abrams, Sergeant Jones, and Sergeant Lucas in their individual capacities, as well as to his retaliation claim against Captain Abrams in his individual capacity. *Id*. at 30. However, Judge Ingram recommended granting the Defendants' Motion for Summary Judgment as to all other claims. *Id*. at 30–31.

Additionally, Judge Ingram construed Mr. Cousins's *pro se* motion "for reason to set jury trial or ask the judge to grant case in favor of the plaintiff" [R. 64] as a motion for summary judgment [R. 72 at 29–30]. In response, Defendants filed a motion to strike this pleading [R. 65] and Judge Ingram agreed, finding Mr. Cousins's motion to be untimely, as it was filed more than three months after the deadline to file dispositive motions [R. 72 at 29–30]. Because neither party objected to these recommendations, the Court is not required to "review . . . a magistrate's factual or legal conclusions, under a de novo or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Parties who fail to object to a Magistrate's Report and Recommendation are also barred from appealing a district court's order adopting that Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Nonetheless, the

7

Court has considered the record and ultimately agrees with Judge Ingram's recommendation as to Mr. Cousins's Motion for Order [R. 64] and Defendants' Motion to Strike [R. 65].

## II

### A

Defendants filed objections to the Magistrate Judge's recommendation. [R. 76.] Predictably, these objections extend only to the portion of the recommendation denying their motion for summary judgment in part. *Id*. Because these objections are sufficiently specific, the Court reviews the Magistrate Judge's recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1)(c).

#### 1

At the onset, Defendants object to Judge Ingram's recommendation that they be held individually liable. [R. 76 at 2–7.] Mr. Cousins did not explicitly identify in his complaint whether he intended to sue the Defendants in their individual or official capacities. Therefore, in the absence of such statement, the Court must apply a "course of proceedings" analysis to determine if the Defendants received notice of his intent to hold them personally liable. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). In applying this test, the Court considers:

> such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. The test also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she is sued.

*Id*. at 722 n. 1 (citations omitted).

Defendants first argue that Mr. Cousins included their official titles when he named them in the complaint, and therefore, they could not have been noticed to individual liability. *Id.* at 3. A plaintiff's method of referring to the defendants is one factor in the course of proceedings test.

8

*Thomas v. Noder-Love*, 621 F. App'x 825, 831 (6th Cir. 2015) (citing *Moore*, 272 F.3d at 772–73). Emphasis on the defendants' official positions, and naming them by those positions, can suggest the defendants were not aware they could be held individually liable, *see id.*; *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003), while using the defendants' individual names and emphasizing individual acts can notice the defendant to the possibility of individual liability, *see Shepherd v. Wellman*, 313 F.3d 963, 968–69 (6th Cir. 2002); *Moore*, 272 F.3d at 773. Here, the Defendants were named on the complaint by both their position and surnames, [R. 1 at 1], and throughout the complaint they were referred to by either their surname or their surname and their official position, *see id.* at 2–3. Judge Ingram reasoned Mr. Cousins's could still have intended to sue individually because the form includes a space for the officials' titles and prisoners often do not know their jailers' names. [R. 72 at 20.] But the Defendants argue that the notice requirement is not satisfied if the Plaintiff refers to the Defendants by their titles. [R. 76 at 3.] However, the Plaintiff did not refer to the Defendants exclusively in their official capacities, so this case is distinct from those where the plaintiff's references to the defendants suggested only official liability. *Thomas*, 621 F. App'x at 831; *Rodgers*, 344 F.3d at 594. Therefore, while this factor is insufficient on its own to notice the Defendants of individual liability, it does not exclusively establish they are only liable in their official capacities.

Next, Defendants argue that because county officials, as opposed to state officials, can be liable for monetary damages under § 1983 in their official capacity, Mr. Cousins's request for monetary damages does not mean the Defendants knew they were being held personally liable. [R. 76 at 4–5.] Requests for money damages often signal individual liability, though this is also not dispositive. *Shepherd*, 313 F.3d at 969. Mr. Cousins did request monetary damages of "at least [$]250,000," [R. 1 at 8], as a lump sum, not divided between the Defendants, *see Moore*,

9

272 F.3d at 773, but not directly from the jail, *see Sykes v. Sumner Cty. Jail*, No. 3:12-cv-17, 2012 U.S. Dist. LEXIS 110577 (M.D. Tenn. Aug. 6, 2012). The Defendants argue that suits against county officials *in their official capacities* can subject the county to monetary damages, but this precludes the finding the Court must make. It is also true that suits against these Defendants in their individual capacities could subject them monetary damages. Therefore, this requested relief did not signal only official liability, and noticed the Defendants of the possibility of individual liability. Further, the Defendants' argument that this request is from the jail because another form of relief was requested "from the jail" (a "letter of sorry") is not compelling, as he also requested a "letter of sorry" specifically from one of the Defendants. [R. 1 at 8.] So, while not dispositive on its own, Mr. Cousins's request for monetary damages suggests the Defendants would be individually liable.

Defendants raised a qualified immunity defense in their answer to Mr. Cousins's complaint, which Judge Ingram considered as a factor in his application of the course of proceedings test. [R. 72 at 11–12.] Defendants also object to this, claiming they should not be punished for raising the defense when failure to raise it would constitute waiver. [R. 76 at 5.] However, the Defendants would only raise the qualified immunity defense if they knew it was possible Mr. Cousins was claiming personal liability, exactly what the course of proceedings test is used to determine. *Moore*, 272 F.3d at 772. Further, *Moore* specifically notes that the defenses a defendant raises in response to the complaint, "particularly claims of qualified immunity," are to be analyzed in the course of proceedings test. *Id*. at 772 n. 1 (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). Contrary to Defendants' argument, this does not require them to choose between "preserving their qualified immunity" and "preserving their argument that the complaint does not state individual-capacity claims. [R. 76 at 5.] For

example, Defendants could have noted the defense was raised only to avoid waiver, and that despite waiving the defense, they preserved their objection to being sued as individuals. Defendants did not, however, specify this, and the Sixth Circuit has recognized the assertion of qualified immunity as a factor suggesting the Defendants were on notice of personal liability. *Moore*, 272 F.3d at 772 n. 1.

Finally, the Defendants believe the Mr. Cousins's response to the Defendants' motion for summary judgment, which states his intent to sue the Defendants in their individual capacities, was filed too late in the proceedings to provide them notice. [R. 76 at 6.] His initial complaint was filed May 15, 2018, [R. 1], and he clarified his desire to seek individual liability in his March 13, 2019, response to the Defendants' motion for summary judgment, [R. 50]. Judge Ingram briefly noted that this filing placed Defendants on notice that they could be individually liable. [R. 72 at 12.] This issue is often resolved by looking to the stage of the pleadings, *see, e.g. Moore*, 272 F.3d at 774, though sometimes the timeframe between the complaint and clarifying pleading is noted, *Wilson v. Carroll Cty.*, No. 12-68-GFVT, 2013 U.S. Dist. LEXIS 76452, *9 (E.D. Ky. May 31, 2013) (within two months of the complaint is the early stages of litigation). Usually a plaintiff's clarification in an unspecified capacity case is sufficient to notice the Defendants to personal liability when it is in a response to a motion to dismiss. *See Janet A. Davis v. Bishop*, No. 5:12-cv-272-KKC, 2013 U.S. Dist. LEXIS 135532, *10 (E.D. Ky. Sept. 23, 2013); *Wilson*, 2013 U.S. Dist. LEXIS 76452 at *9-10; *Sykes*, 2012 U.S. Dist. LEXIS 110577 at *15; *Williams v. Tenn. Dep't of Corr.*, No. 3:05-0786, 2006 U.S. Dist. LEXIS 6786, *5 (M.D. Tenn. Feb. 2, 2006). Most important, the Sixth Circuit has explicitly stated that clarification contained in the response to a defendant's motion for summary judgment is sufficient notice that the defendant is being sued in an individual capacity. *Abdur-Rahman v.*

*Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995). Because Mr. Cousins did just that, he placed Defendants on sufficient notice. While some of these factors are not alone dispositive, the totality of these circumstances indicates that Defendants received notice of Mr. Cousins's intent to hold them personally liable. *Moore*, 272 F.3d at 772. The Court thus overrules this objection.

**2**

Defendants also object to Judge Ingram's denial of summary judgment as to Mr. Cousins's Free Exercise claims. [R. 76 at 7–10.] Defendants claim Judge Ingram incorrectly found a genuine dispute of material fact. *Id*. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*,

285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted). When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The summary judgment inquiry is, therefore, a burden-shifting analysis. First, the moving party must demonstrate an absence of genuine dispute. *Hall Holding*, 285 F.3d at 424. Only *after* the movant satisfies this requirement is the non-moving party required to point to specific facts in the record showing a genuine dispute. *Id*. Defendants skip the first part of this, assume that they have satisfied their burden, and argue that Mr. Cousins was unable to provide significant probative evidence to support his case. [R. 76 at 8.] The Defendants indicated that the jail "has an objectively reasonable interest in ensuring that only inmates whose sincere religious beliefs necessitate a kosher diet receive kosher meals." [R. 39-1 at 25.] They submitted evidence that kosher meals were more expensive than general population meals. [R. 39-7 at ¶¶ 4, 5, and 6.] They also submitted the jail policy that provisions for special diets are only to be made "after consultation with the minister or other religious authority." [R. 39-35.]

What Defendants did not demonstrate is *why* they denied Mr. Cousins kosher meals. In their pleadings, they claim he was denied these meals because he failed to verify his faith with a religious authority. [R. 76 at 7–8.] But Defendants did not, and still do not, provide anything other than their own pleadings to support their version of the facts. The very text of Rule 56 requires Defendants to cite "to particular parts of materials in the record, including depositions,

13

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," to succeed on this motion. Fed. R. Civ. Pro. 56(c)(1). While Defendants established that the jail has a policy, they pointed to no materials in the record to show that their denial of Mr. Cousins's kosher meals was in accordance with that policy. [R. 39-1.] Thus, the Court agrees with Judge Ingram: "nothing demonstrates whether the defendants in this case deferred or denied Cousins's requests for a kosher meal because he had failed to demonstrate to them his faith was sincerely held." [R. 72 at 16.]

Because the Defendants failed to meet their initial burden, Mr. Cousins has no obligation to point to specific facts in the record showing a genuine dispute. *Hall Holding*, 285 F.3d at 424. Therefore, Defendants' objections related to this second phase of the inquiry are misplaced. True, had they met their burden, Mr. Cousins would need to "do more than simply show that there is some metaphysical doubt as to the material facts," and he would have had to "present significant probative evidence tending to support his version of the facts." [R. 76 at 8 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009).] But they did not meet this burden, and therefore, Mr. Cousins did not need to demonstrate these facts. The Defendants' objection is overruled.

### 3

Defendants next argue they were entitled to qualified immunity as to Mr. Cousins's Free Exercise claims. [R. 76 at 7–10.] The Defendants would be entitled to qualified immunity unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577,

589 (2018) (internal quotation marks and citation omitted). Captain Abrams, Sergeant Jones, and Sergeant Lucas knew they were required to justify their denial of Mr. Cousins's requests for kosher meals with a legitimate penological interest. *See Russell v. Wilksonson*, 79 F. App'x 175, 177 (6th Cir. 2003). The proper scrutiny for determining whether a prison regulation violates inmates' rights is that it must be reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Defendants argue that Judge Ingram conflated prison *policy* with individual officers' *decisions*: that *Turner* requires the prison policy to be supported by a legitimate penological interest, but a "defendant's state of mind is irrelevant." [R. 76 at 10.] Defendants do not cite, and the Court cannot find, any authority to support this. Rather, the Sixth Circuit *has* applied this standard to the decisions of individual officers. *See Maye v. Klee*, 915 F.3d 1076, 1083–84 (6th Cir. 2019); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010). Finding the objection to be without merit, the Court overrules this as well.

### 4

Finally, Captain Abrams objects to Judge Ingram's denial of summary judgment regarding the retaliation claim. [R. 76 at 10–11.] To succeed on a retaliation claim, the plaintiff must show (1) they were engaged in protected conduct, (2) adverse action was taken against them that would prevent a person of ordinary firmness from continuing that conduct, and (3) the adverse action has a causal connection with the protected conduct. *Russel v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Judge Ingram decided Captain Abrams's threat of "locking down" the Plaintiff is comparable to adverse action, and a genuine dispute exists to Captain Abrams's intent, so summary judgement on this claim is inappropriate. [R. 72 at 21-24.] The Defendants challenge

this first determination, that the threatened lockdown constitutes adverse action, because the Plaintiff was not deterred from exercising his right to speech. [R. 76 at 10-11.]

Retaliation against Mr. Cousins rises to the level of "adverse action" if it is "capable of deterring a person of ordinary firmness" from filing additional grievances. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). Defendants claim that because Mr. Cousins continued to file grievances, regardless of Captain Abrams's threats, and because he took no affirmative step to place Mr. Cousins in lockdown, the threats alone were not sufficient to constitute adverse action. [R. 76 at 11.] But Defendants offer no binding authority to support this. *Id*. The Sixth Circuit is clear that *actual* deterrence is irrelevant to this inquiry; the adverse action in question need only be *capable* of deterrence. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002); *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005)). Placing a prisoner in administrative segregation or in a similar facility is an adverse action. *Hill*, 630 F.3d at 474. Thus, because placing Mr. Cousins in lockdown would be an adverse action, and the threat of lockdown itself would be capable of deterrence, Captain Abrams's threats constitute adverse action. Since actual deterrence is not necessary, Defendants' final objection is overruled.

**B**

Mr. Cousins has filed his own objections to the Magistrate Judge's Recommendation. [R. 80.] The first three enumerated objections relate to Judge Ingram's grant of summary judgment for Jailer Rick Rogers. [R. 80 at 1.] Construed liberally, *see Pilgram v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), Mr. Cousins essentially argues that Jailer Rogers should be held liable for the actions of the other Defendants because he should "be liable for what's going on in his jail." [R. 80 at 1.] However, the law is clear that

*respondeat superior*, the legal doctrine which holds an employer liable for the actions of his employees, does not apply to § 1983 claims. *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010). Mr. Cousins did not allege that Jailer Rogers affirmatively did anything in these situations, and even admitted that he was unsure if Jailer Rogers was even aware of the incidents. [R. 39-4 at 29.] Without specific facts demonstrating Jailer Rogers's personal involvement in action that infringed upon Mr. Cousins's constitutional rights, summary judgment for Jailer Rogers is appropriate. *Colvin*, 605 F.3d at 292 (affirming summary judgment for defendants when plaintiff failed to allege that prison supervisory officials "had any involvement in the administration of the kosher-meal program or the Jewish services and literature selection").

Next, listed as numbers four and five, Mr. Cousins restates his request to sue the Defendants in both their individual and official capacities. [R. 80 at 1–2.] Mr. Cousins lists this as an objection to the Report and Recommendation, however, Judge Ingram agreed with Mr. Cousins and found it appropriate to construe the action in this manner. [R. 72.] Because Judge Ingram found that Mr. Cousins sued the Defendants in both their individual and official capacities, and because this Court has agreed with Judge Ingram, this objection is overruled as moot.

Finally, Mr. Cousins requests, again, for the Defendants to answer his "affidavit of truth." [R. 80 at 2.] An affidavit is defined as: "A voluntary declaration of facts written down and sworn to by a declarant." *Affidavit*, BLACK'S LAW DICTIONARY (11th ed. 2019). An affidavit is not a motion, and therefore does not require a response by another party. What Mr. Cousins has attempted to do is a request for discovery, however, all discovery was ordered to be completed by January 15, 2019. [R. 16.] Any requests for discovery at this stage are untimely. Therefore, Mr. Cousins's final objection is also overruled.

# C

Following Judge Ingram's filed Report and Recommendation, Mr. Cousins filed several other motions. First, he filed a "Motion for the judge to set a date and time for the plaintiff to have a summary judgment for the defendants." [R. 79.] However, the Magistrate Judge already scheduled that deadline, which was February 15, 2019. [R. 16 at 1.] That Scheduling Order was entered on September 12, 2018, well before the dispositive motion deadline. *Id*. Thus, Mr. Cousins's motion is construed as a motion for extension of time. But, the Scheduling Order also required that any request for extension must be filed as a motion "before the pertinent deadline passes" and that motion must "show good cause for the extension." *Id*. at 2. Mr. Cousins did not file his motion prior to the February 15, 2019, deadline, nor does he show good cause for the delay or for an extension of time at this stage in the proceedings. This motion is denied.

Next, Mr. Cousins filed a "Motion to get copies of file from the franklin county court." [R. 81.] In this motion, Mr. Cousins requests records he has filed with "the superior court." *Id*. This matter is filed in the United States District Court for the Eastern District of Kentucky, not the Franklin County Court or the Superior Court. To the extent that he requests records from a Superior Court or the Franklin County Court, Mr. Cousins will need to contact the Clerks' offices in those respective courts. To the extent Mr. Cousins requests documents filed in this matter, he will need to contact the Court Clerk. The Clerk provides a courtesy copy of the docket sheet, however, if he would like a copy of any document filed in the record, he must send the request to the Office of the Clerk, noting the docket entry for each copy requested. After he submits that request, the Clerk will submit a response, advising him of the total number of pages and the amount of money required to obtain the requested copies. Copies of the documents

require a fee of 50 cents per page, to be paid in advance. The Court denies Mr. Cousins's motion but will direct the Clerk to send him a copy of the docket sheet.

Finally, Mr. Cousins filed a "Motion asking Nathen Goodrich for anything you have on file that plaintiff in this said case has filed in 2017 as you was [sic] his lawyer also so any letters that was mailed or send to the judge that also would be in his file." [R. 82.] This is a discovery request. Again, the Magistrate Judge's Scheduling Order require discovery to be completed by January 15, 2019. [R. 16 at 1.] Mr. Cousins did not request modification of this deadline, as required by the Scheduling Order. *Id*. at 2. Nor does Mr. Cousins specify why he is requesting further discovery nearly seven months after the deadline. [R. 82.] This motion is also denied.

### III

After reviewing *de novo* the entire record, as well as the relevant case law and statutory authority, the Court agrees with Judge Ingram's thorough analysis of this matter. Accordingly, it is hereby **ORDERED** as follows:

1. Magistrate Judge Hanly A. Ingram's Report and Recommendation [**R. 72**] as to the Defendants' Motion for Summary Judgment is **ADOPTED** and for the Opinion of the Court;

2. Defendants' Objections to Magistrate Judge Ingram's Report and Recommendation [**R. 76**] are **OVERRULED**;

3. Mr. Cousins's Objections to Magistrate Judge Ingram's Report and Recommendation [**R. 80; R. 83**] are **OVERRULED**;

4. Defendants' Motion for Summary Judgment [**R. 39**] is **DENIED IN PART** as to Mr. Cousins's First Amendment Free Exercise Claims against Captain Abrams, Sergeant Jones, and Sergeant Lucas in their individual capacities;

5. Defendants' Motion for Summary Judgment [**R. 39**] is **DENIED IN PART** as to Mr. Cousins's Retaliation Claim against Captain Abrams in his individual capacity;

6. Defendants' Motion for Summary Judgment [**R. 39**] is **GRANTED IN PART** as to all other claims by Mr. Cousins against the Defendants;

7. Mr. Cousins's Motion for Order Setting Jury Trial [**R. 64**] is **DENIED**;

8. Defendants' Motion to Strike [**R. 65**] is **GRANTED**;

9. Mr. Cousins's Motion for Order Setting Dispositive Motion Deadline [**R. 79**] is **DENIED**;

10. Mr. Cousins's Motion to Get Copies of File [**R. 81**] is **DENIED**;

11. The Clerk **SHALL SEND** a courtesy copy of the docket sheet to Mr. Cousins;

12. Mr. Cousins's Motion to Produce Evidence [**R. 82**] is **DENIED**; and

13. Having denied a portion of Defendants' Motion for Summary Judgment, this matter is **REFERRED** to Magistrate Judge Hanly A. Ingram for a telephonic conference to determine the status of the case and how to proceed.

This the 16th day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge